UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


TERRY L. COLEMAN and
PATRICIA COLEMAN, his wife,

      Plaintiffs,

v.                                    Civil Action No. 2:11-00558

TOMMY WICKER and
STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,
an Illinois corporation,

      Defendants.


<u>MEMORANDUM OPINION AND ORDER</u>


      Pending is plaintiffs' Terry L. and Patricia Coleman's motion to remand filed August 30, 2011.


I.


      Mr. and Mrs. Coleman, and defendant Tommy Wicker, are West Virginia citizens.  Defendant State Farm Mutual Automobile Insurance Company ("State Farm") is an Illinois citizen.  On July 30, 2009, Mr. Coleman was operating a vehicle owned by Lesley Waskey, the Colemans' daughter.  The Waskey vehicle was struck from behind by Mr. Wicker, who was driving a truck at the time.

On July 8, 2011, the Colemans instituted an action in the Circuit Court of Mingo County.  Mr. Coleman alleges that he "will or may sustain in the future" certain temporary and permanent personal injuries, pain and suffering, emotional distress, medical expenses, and loss of enjoyment of life. (Compl. at 3).  In keeping with the 2008 enactment by the legislature that "no specific dollar amount or figure relating to damages being sought may be included in the complaint" no amount for damages is specified in the complaint.  W. Va. Code § 55-7-25.

In Count One, Mr. Coleman alleges a negligence claim against Mr. Wicker.  In Count Two, Ms. Coleman alleges a loss of consortium against Mr. Wicker.  Both of those claims appear to have been settled, in part, with Mr. Wicker's insurance carrier, GEICO, for the $20,000 policy limits prior to this action having been instituted.  The residue of those two claims continue in this action, which seeks, in part, contractual underinsurance coverage benefits under two separate State Farm policies described below.

The Colemans were insured under State Farm policy 2247-265-48E, which has a per person underinsured limit of $100,000 ("Coleman policy").  Ms. Waskey's State Farm policy ("Waskey policy"), the number of which is not reflected in the record, contained the same underinsured limit of $100,000 per person as

2

found in the Coleman policy.  The Colemans submitted an
underinsured motorist claim to State Farm under both the Coleman
and Waskey policies for the combined underinsured limits of
$200,000.

Count Three alleges that State Farm, during the
adjustment of the Coleman underinsured coverage claim, acted in
bad faith and violated a number of provisions found in the West
Virginia Unfair Trade Practices Act ("WVUTPA").  The claim is of
the first-party genre arising out of the $200,000 in
underinsurance coverage sought under the Coleman and Waskey
policies.

The allegations giving rise to the extracontractual
claim found in Count Three are that State Farm, <u>inter</u> <u>alia</u>, (1)
failed to make a good faith offer to promptly settle the claim,
(2) failed to make a reasonable investigation of the claim,
waiting until near the running of the limitations period before
seeking additional medical records, and (3) failed to promptly
provide a reasonable explanation of the basis in the insurance
policy supporting its failure to make a reasonable settlement
offer.  The Colemans seek a separate award of compensatory damages
for the Count Three extracontractual claim, along with a punitive
damages request.

On August 17, 2011, State Farm removed pursuant to 28 U.S.C. § 1332(a)(1). The two-page notice of removal is short on details concerning the amount in controversy. It alleges only that "this is a civil action wherein the matter in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000.00)" and that plaintiffs "seek[] underinsured motor vehicle coverage under a State Farm policy together with extracontractual damages, including punitive damages." (Not. of Remov. at 2). State Farm also asserts as follows: "Defendant, Tommy Wicker is an underinsured motorist and, as such, a nominal party pursuant to Kidd v. Gilfilen, 170 F.Supp.2d 649 (S.D. W.Va. 2001)." (Not. of Remov. at 2).

On August 30, 2011, the Colemans moved to remand. They assert that State Farm has not satisfied its burden of proof respecting the $75,000 jurisdictional minimum. They additionally note State Farm previously offered to settle the case for approximately $33,000, a counteroffer that the Colemans rejected outright.[1]

---

[1] The Colemans also briefly assert the parties are not diverse, given the naming of Mr. Wicker and the fact that he has been served. State Farm, relying upon Kidd, contends that Mr. Wicker is a nominal party.

It is well settled that "a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." Navarro Savings

State Farm responds that, in July 2011, the Colemans' lawyer demanded $200,000 to settle the case.  State Farm also points out the "panoply of available damages," which it asserts to include "compensatory damages for the delay in settlement, attorney's fees (presumed to be one-third of the plaintiff's compensatory and punitive damages award) and punitive damages for the alleged unfair claims handling."  (Resp. to Remand Mot. at 5).


II.


The court is vested with original jurisdiction of all actions between citizens of different states when the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). The statute

---

Assoc. v. Lee, Jr., 446 U.S. 458, 460-61 (1980).  "Nominal parties are generally those without a real interest in the litigation." Bumberger v. Insurance Co. of N.A., 952 F.2d 764, 767 (3rd Cir. 1991).  In Kidd, the court disregarded the citizenship of the tortfeasor who caused the physical injuries suffered by plaintiff. The decision was based upon the tortfeasor's minimal stake in the action, her failure to appear, the uncollectability of any judgment rendered against her, and her apparent declination respecting control or decisionmaking in the case.
    The Colemans offer no basis for distinguishing Kidd, as was the case in Spencer v. Harris, 394 F.Supp.2d 840 (S.D. W. Va. 2005).  Id. at 845 ("In light of Harris's testimony, the court may not conclude, as was presumed in Kidd, that he, as the alleged tortfeasor, is judgment proof or that he has no interest in this litigation and its outcome that will decide whether he is at fault and possibly affect his ability to obtain vehicle liability insurance in the future.").  The court thus deems Kidd applicable here.  Mr. Wicker is a nominal party whose citizenship is properly disregarded.

5

establishing diversity jurisdiction is to be strictly construed.
Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941);
Healy v. Ratta, 292 U.S. 263, 270 (1934); Schlumberger Indus.,
Inc. v. Nat'l Surety Corp., 36 F.3d 1274, 1284 (4th Cir.1994). The
party seeking removal bears the burden of establishing federal
jurisdiction and, if challenged, also bears the burden of proving
that federal jurisdiction was properly invoked. Mulcahey v.
Columbia Organic Chem. Co., 29 F.3d 148, 151 (4th Cir. 1994).

        In a case that is filed initially in federal court, a
district court has original jurisdiction if the requisite
diversity of citizenship exists unless it "appear[s] to a legal
certainty that the claim is really for less than the
jurisdictional amount." St. Paul Mercury Indem. Co. v. Red Cab
Co., 303 U.S. 283, 289 (1938).  A different test applies in
removal situations.  A defendant who removes a case from state
court in which the damages sought are unspecified, asserting the
existence of diversity jurisdiction, must prove by a preponderance
of the evidence that the matter in controversy exceeds the
jurisdictional amount of $75,000.  See, e.g., Roe v. Michelin
North America, Inc., 613 F.3d 1058, 1061 (11th Cir. 2010); Bell v.
Hershey Co., 557 F.3d 953, 956 (8th Cir. 2009); Guglielmino v.
McKee Foods Corp., 506 F.3d 696, 699 (9th Cir. 2007); Everett v.

6

<u>Verizon Wireless, Inc.</u>, 460 F.3d 818, 829 (6th Cir. 2006); <u>Andrews</u>
<u>v. E.I. Du Pont De Nemours and Co.</u>, 447 F.3d 510, 515 (7th Cir.
2006); <u>Garcia v. Koch Oil Co. of Texas Inc.</u>, 351 F.3d 636, 638-39
(5th Cir. 2003); <u>Landmark Corp. v. Apogee Coal Co.</u>, 945 F. Supp.
932 (S.D. W. Va. 1996); <u>see also</u> 14C Charles A. Wright <u>et al.</u>,
<u>Federal Practice and Procedure</u> § 3725.1 (4th ed. elec. 2011) ("The
prevailing standard . . . has become that the defendant prove 'by
a preponderance of evidence' that the amount involved in the
litigation exceeds the statutory jurisdictional threshold.").

A court often considers the entire record and makes an
independent evaluation of whether the amount in controversy has
been satisfied. <u>Weddington v. Ford Motor Credit Co.</u>, 59 F. Supp.2d
578, 584 (S.D. W. Va. 1999); <u>Mullins v. Harry's Mobile Home, Inc.</u>,
861 F. Supp. 22, 23 (S.D. W. Va. 1994).  It has been stated as
follows:

> Important items of proof would be the type and extent of
> the plaintiff's injuries, . . . and the possible damages
> recoverable therefore, including punitive damages if
> appropriate. . . . The defendant may also present
> evidence of any settlement demands made by the plaintiff
> prior to removal . . . . although the weight to be given
> such demands is a matter of dispute among courts.

<u>Watterson v. GMRI, Inc.</u>, 14 F. Supp.2d 844, 850 (S.D. W. Va.
1997); <u>Werwinski v. Ford Motor Co.</u>, 286 F.3d 661, 666 (3rd Cir.
2002)("The court must measure the amount 'not . . . by the low end

of an open-ended claim, but rather by a reasonable reading of the value of the rights being litigated.'") (quoting <u>Angus v. Shiley Inc.</u>, 989 F.2d 142, 146 (3d Cir. 1993)); <u>United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Properties Meriden Square, Inc.</u>, 30 F.3d 298, 305 (2nd Cir. 1994)("Where the pleadings themselves are inconclusive as to the amount in controversy, however, federal courts may look outside those pleadings to other evidence in the record.") (citing <u>Land v. Dollar</u>, 330 U.S. 731, 735 & n.4 (1947)).

The potential recovery on Counts One, Two, and Three could be quite significant. <u>See</u> <u>Marshall v. Saseen</u>, 192 W.Va. 94, 100, 450 S.E.2d 791, 797 (1994)(concluding "that when a policyholder of . . . underinsured motorist coverage . . . substantially prevails in a suit involving such coverage under W. Va. Code, 33-6-31(d), the insurer is liable for the amount recovered up to the policy limits, the policyholder's reasonable attorney fees, and damages proven for aggravation and inconvenience.").

First, the court notes that the Colemans rejected outright State Farm's approximate $33,000 offer of settlement for their contractual underinsurance claim.  It seems fair, then, to consider that sum the floor for the amount-in-controversy

determination.  Second, one would expect that costs and attorney fees associated with pursuing the case will multiply rapidly if the litigation proceeds through dispositive motions.  It seems that $25,000 for these costs and fees would be a quite conservative estimate.  The insubstantial sum of $5,000 will be used for the annoyance and inconvenience to which the Colemans were put in enforcing their contractual rights.

All of these considerations combined lead to a conservative estimate of $63,000 as the sum recoverable by the Colemans for the policy proceeds and compensatory extracontractual damages.  There is, additionally, however, the punitive damages request.  An austere one-half multiplier for the aforementioned $63,000 award is enough to surmount the jurisdictional minimum.[2]

Based upon the foregoing discussion, the court concludes that the amount in controversy exceeds $75,000.  It is,

---

[2] In State Farm Mutual Automobile Ins. Co. v. Campbell, 538 U.S. 408 (2003), the United States Supreme Court examined the relationship of punitive damages to compensatory damages and suggested in dicta that single digit ratios are presumptively valid. Id. at 425 ("We decline again to impose a bright-line ratio which a punitive damages award cannot exceed. Our jurisprudence and the principles it has now established demonstrate, however, that, in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process.").

accordingly, ORDERED that the Colemans' motion to remand be, and it hereby is, denied.

The Clerk is directed to transmit copies of this written opinion and order to all counsel of record and any unrepresented parties.

ENTER: March 30, 2012

John T. Copenhaver, Jr.
United States District Judge

10